UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| THOMAS F. KIESZEK, | ) | Case No. EDCV 05-840-JTL |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MEMORANDUM OPINION AND ORDER |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

On September 8, 2005, Thomas F. Kieszek ("plaintiff") filed a Complaint seeking review of the Commissioner's denial of plaintiff's application for social security disability insurance benefits. On September 17, 2005, the parties filed a Consent to Proceed Before United States Magistrate Judge Jennifer T. Lum. Thereafter, on March 7, 2006, defendant filed an Answer to Complaint. On May 4, 2006, the parties filed their Joint Stipulation.

The matter is now ready for decision.

///

///

///

**BACKGROUND**

On March 12, 2002, plaintiff filed an application for disability insurance benefits. (Administrative Record ["AR"] at 57-59). In his application, plaintiff claimed that, beginning on January 1, 1997, severe back pain and poor physical health prevented him from working. (AR at 88). The Commissioner denied plaintiff's application for benefits both initially and upon reconsideration. (AR at 25-30, 33-36). On or about June 10, 2003, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR at 37).

On February 19, 2004, the ALJ scheduled a hearing in San Bernardino, California. (AR at 265-71). Plaintiff; Gloria Lasoff, a vocational expert; and Colleen Kieszek, a witness, all appeared at the hearing. (AR at 265). No testimony was taken and the ALJ continued the hearing to allow plaintiff time to obtain additional documentation. (AR at 268-70).

The hearing occurred on June 14, 2004. (AR at 246-64). Plaintiff appeared at the hearing and testified. (AR at 249-62). Sandra Fieretti, a vocational expert, also appeared and testified. (AR at 262-63). On July 15, 2004, the ALJ issued a decision denying benefits. (AR at 16-24). In his decision, the ALJ concluded that plaintiff suffered from the severe impairments of degenerative disease and angina pectoris. (AR at 18). The ALJ also determined that these impairments did not meet or equal any of the criteria contained in the Commissioner's Listing of Impairments, 20 C.F.R. Section 404, Subpart P, Appendix 1. (Id.). The ALJ found that, based upon plaintiff's residual functional capacity, plaintiff retained the physical capacity to perform a significant range of light work, including lifting 20 pounds occasionally, lifting 10 pounds frequently, standing for 20

minutes, and sitting for 30 minutes with the opportunity to shift positons and sit for approximately three-fourths of the time in a eight-hour day. (AR at 18). The ALJ also found that plaintiff had the mental capacity to perform simple, repetitive tasks. ( <u>Id.</u>). Adopting the testimony of the vocational expert, the ALJ concluded that plaintiff could perform the work of a bench assembler at the light exertional level, small products assembler II at the light exertional level, and charge account clerk at the sedentary exertional level. (AR at 22). Ultimately, the ALJ found that plaintiff was not disabled pursuant to the Social Security Act. (<u>Id.</u>).

On August 11, 2004, plaintiff filed a request with the Appeals Council for review of the ALJ's decision. (AR at 12). On July 25, 2005, the Appeals Council affirmed the ALJ's decision. (AR at 5-7).

**PLAINTIFF'S CONTENTIONS**

Plaintiff makes the following claims in the parties' Joint Stipulation:

1.   The ALJ's assessment of plaintiff's residual functional capacity is not supported by substantial evidence in the record.

2.   The ALJ failed to properly consider plaintiff's subjective complaints and to properly assess his credibility.

3.   The ALJ failed to pose a complete hypothetical question to the vocational expert.

**STANDARD OF REVIEW**

The Court reviews the ALJ's decision under 42 U.S.C. § 405(g) to determine whether the ALJ's findings are supported by substantial

evidence and whether the proper legal standards were applied.  DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991).  Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401 (1971); Desrosiers v. Secretary of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson, 402 U.S. at 401.  This Court must review the record as a whole and consider adverse as well as supporting evidence.  Green v. Heckler, 803 F.2d 528, 529-30 (9th Cir. 1986).  Where evidence is susceptible of more than one rational interpretation, the ALJ's decision must be upheld.  Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984).

## DISCUSSION

### A.   The Sequential Evaluation

The Commissioner has established a five-step sequential process for determining whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920 (1991); Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  At step one, disability benefits are denied if the Commissioner determines that the claimant is engaged in substantial gainful activity.  Id. at 140.  At step two, the Commissioner evaluates whether the claimant has a medically severe impairment which significantly limits her physical or mental ability to do basic work activities.  Id. at 140-41.  Step three requires a consideration of whether the claimant's impairment is equivalent to one of a number of listed impairments that are so severe as to preclude substantial gainful activity.  Id. at 141.  If the impediment meets or equals one

1  of the listed impairments, the claimant is presumptively disabled.

2  Bowen, 482 U.S. at 141.  If the impairment is not one that is

3  conclusively presumed to be disabling, step four of the evaluation

4  determines whether the impairment prevents the claimant from

5  performing work he has performed in the past.  Id.  If the claimant

6  cannot perform his past work, the fifth and final step determines

7  whether he is able to perform other work in the national economy in

8  light of his age, education and work experience.  Id. at 142.  The

9  claimant is entitled to disability benefits only if he is not able to

10 perform such work.  Id.

11 **B.   The ALJ's Assessment of Plaintiff's Residual Functional Capacity**

12      Plaintiff asserts that the ALJ erred in evaluating plaintiff's

13 residual functional capacity.  First, plaintiff contends that the ALJ

14 improperly found no severe mental impairment, when in fact plaintiff

15 had substantially limited education and testified that he was

16 frustrated and depressed.  (Joint Stipulation at 4).  Second,

17 plaintiff contends that the ALJ's physical residual functional

18 capacity assessment was based on minimal to no evidence. (Joint

19 Stipulation at 5-6).  Third, plaintiff contends that the ALJ failed to

20 consider the opinion of plaintiff's treating physician, Thomas W.

21 Jackson, M.D., who assessed a disabling back impairment. (Joint

22 Stipulation at 7).

23      **1.   Mental Impairments**

24      Plaintiff claims that the ALJ erred in finding that plaintiff's

25 mental impairments did not constitute a severe impairment.  According

26 to plaintiff, the ALJ failed to consider the evidence in the record

27 with regard to plaintiff's limited education and testimony that he was

28 frustrated and depressed.  (Joint Stipulation at 4).  Plaintiff also

1  contends that the ALJ's failure to obtain a psychological consultative

2  examination or psychological medical expert testimony constitutes

3  error.  (Id.).

4      "An impairment or combination of impairments is not severe if it

5  does not significantly limit [the claimant's] physical ability to do

6  basic work activities."  20 C.F.R. § 404.1521(a).  Basic work

7  activities include the "abilities and aptitudes necessary to do most

8  jobs," such as "understanding, carrying out, and remembering simple

9  instructions" and "responding appropriately to supervision, co-workers

10 and usual work conditions."  20 C.F.R. § 404.1521(b)(3)-(4); see also

11 Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996); Yuckert v.

12 Bowen, 841 F.2d 303, 306 (9th Cir. 1988).  "An impairment or

13 combination of impairments can be found 'not severe' only if the

14 evidence establishes a slight abnormality that has 'no more than a

15 minimal effect on an individual's ability to work.'"  Smolen, 80 F.3d

16 at 1290 (quoting Yuckert, 841 F.2d at 306).  The severity inquiry at

17 step two is a de minimus screening device, intended to allow the

18 Commissioner to dispose of groundless claims.  Bowen v. Yuckert, 482

19 U.S. 137, 153 (1987); Smolen, 80 F.3d at 1290.

20     Here, the ALJ found that plaintiff's mental impairments did not

21 constitute a severe impairment.  Specifically, the ALJ noted that

22 plaintiff's depression was "situational" and limited him to simple,

23 repetitive tasks due to side effects of his medications.  (AR at 18).

24 The ALJ also precluded plaintiff from complex tasks.  (Id.).  The

25 Court finds no error in the ALJ's assessment.

26     Plaintiff did not complain to any physicians that he suffered

27 from depression or any other mental impairment.  In his application

28 for disability benefits, moreover, plaintiff did not list any mental

impairments.  In a single instance, plaintiff, in his application for reconsideration, stated that the "the lack of income puts extreme stress on [him], followed by frustration and depression." (AR at 99). Plaintiff's statement, however, strongly suggests that the stress, frustration, and depression are based on his current unemployed status and lack of income.  These factors are indeed situational, as noted by the ALJ.  While plaintiff completed only up to the tenth grade and suffered from a head injury and learning disability, he also testified that he can write simple sentences and that he reads Reader's Digest "all the time." (AR at 252-53).  Given the absence of evidence in the records to substantiate plaintiff's claims that he suffers from a mental impairment that more than minimally affects his ability to work, plaintiff has failed to meet the de minimus standard that is be applied to the Step Two severity inquiry.  See Bowen, 482 U.S. at 153.

### 2.  Physical Impairments

Plaintiff contends that the ALJ failed to properly assess his physical residual functional capacity.  Plaintiff contends that the ALJ should have sought the opinion of a consultative examiner or a medical expert. (Joint Stipulation at 5).  Plaintiff further contends that the ALJ failed to identify evidence upon which he based his residual functional capacity assessment. (Id.).

In his decision, the ALJ concluded that plaintiff retained the residual functional capacity for a significant range of light work activities. (AR at 18).  Specifically, the ALJ found that plaintiff was capable of lifting 20 pounds occasionally with the ability to squat to lift off the floor, lifting ten pounds or less frequently, and standing for 20 minutes and sitting for 30 minutes with the opportunity to shift positions and sit for approximately three-fourths

of the time in an eight-hour day.  (AR at 18).  The ALJ also noted
that plaintiff's impairments would require him to miss work
approximately once or twice a month. ( Id.).  The ALJ based his
assessment that plaintiff's medical condition on "objective findings,"
such as plaintiff's orthopedic records and the State Agency
physician's opinion.  (AR at 20).

The ALJ's physical residual functional capacity assessment,
however, appears to be based on plaintiff's own testimony at the
hearing.  Plaintiff testified that he could lift 20 pounds
occasionally with the ability to squat to lift off the floor, lift ten
pounds or less frequently, and stand for 20 minutes and sit for 30
minutes in an eight-hour day if given the opportunity to shift
positions.  (AR at 257).  Plaintiff also testified to the following:

| | |
|---|---|
| Plaintiff: | Roughly once or twice a month I have days where it's extremely difficult for me to get out of bed with the medication that I take I – it make some [sic] kind of spacey sometimes.  But outside of that, if they said, well, if you're not feeling well, and you can take a day or two off twice a month?  Yes, I'd go to work, if I could.  That's what you're asking me?  Yes. |
| ALJ: | So you'd need to take a day off once or twice a month? |
| Plaintiff: | If – yeah, if I were so sore that I needed to. |

(AR at 258).  Thus, plaintiff's testimony regarding his physical
limitations was consistent with the ALJ's assessment.  In fact, the
ALJ essentially adopted plaintiff's own assessment of his limitations.
As such, plaintiff is hard pressed to argue that the ALJ committed

error in his assessment of plaintiff's physical residual functional capacity.

### 3.   Treating Physician

Finally, plaintiff contends that the ALJ failed to properly consider the opinion of disability rendered by his treating physician. This alleged failure to address the treating physician's assessment, he argues, constitutes error.

A treating physician's opinion is not conclusive as to either functional limitations or the ultimate issue of disability.   See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).   The proper weight that an ALJ should give to a treating physician's opinion depends on whether sufficient data supports the opinion and whether the opinion comports with other evidence in the record.   See 20 C.F.R. §§ 404.1527, 416. 927.

Nonetheless, the medical opinion of plaintiff's treating physician is entitled to special weight.   Reddick v. Chatter, 157 F.3d 715, 725 (9th Cir. 1998).   Even when no other medical evidence contradicts that opinion, the ALJ must present clear and convincing reasons for disregarding the opinion of a treating physician.   See Andrews, 53 F.3d at 1041; see also Montijo v. Secretary of Health and Human Services, 729 F.2d 599, 601 (9th Cir. 1984).   When the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject the treating physician's opinion without providing specific and legitimate reasons supported by substantial evidence in the record.   Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995); see also Saelee v. Chater, 94 F.3d 520 (9th Cir. 1996).   Specific and legitimate reasons can be set forth by a "detailed and thorough summary of the facts and conflicting clinical evidence, stating [the

1  ALJ's] interpretation thereof, and making findings." <u>Reddick v.</u>
2  <u>Chater</u>, 157 F.3d 715, 725 (9th Cir. 1998).  More than just rendering
3  conclusions, the ALJ must set forth interpretations and explain why
4  his interpretations, rather than the physician's, are correct.  <u>Id.</u>

5       On June 9, 2003, plaintiff's treating physician, Dr. Jackson,
6  examined and performed an evaluation of plaintiff.  (AR at 236-39).
7  The treating physician diagnosed plaintiff with severe degenerative
8  disc disease of the lumbar spine at L5-S1 with moderate degenerative
9  disc disease at L4-5 and the least at L3-4 and above; lumbar
10 spondylosis involving the facet joints at multiple levels; and
11 bilateral lower extremity radiculitis.  (AR at 238).  Dr. Jackson
12 noted that plaintiff completed a "full conservative treatment program
13 without much success" and that "[s]urgery would really be the only
14 viable option" for plaintiff. (<u>Id.</u>).  Dr. Jackson wrote, "[Plaintiff]
15 would certainly be considered legitimately disabled at this point in
16 time from these back troubles which are degenerative in nature, and
17 worsening and progressive with time." (<u>Id.</u>).

18      The ALJ failed to address Dr. Jackson's assessment of disability
19 in his decision.[1]   (AR at 20).  Although the ALJ summarized Dr.
20 Jackson's examination and diagnoses, he failed to address Dr.
21 Jackson's determination that plaintiff was disabled and unable to

22

23 ──────────────────────

24      [1]  In the Joint Stipulation, plaintiff cites to a Medical
   Report completed by Dr. Dwight Ginnus on March 15, 2004, in which
   the physician diagnosed plaintiff with degenerative disc disease
25 and angina pectoris.  (Joint Stipulation at 6; AR at 240).  Dr.
   Ginnus found plaintiff to be disabled between November of 2002
26 through September 15, 2004, thereby preventing or substantially
   reducing his ability to work.  (<u>Id.</u>).  As noted by the
27 Commissioner, the ALJ gave reasons for rejecting the March 15,
   2004 report, namely that the report was unsupported by objective
28 evidence, did not indicate ay restrictions, and was inconsistence
   with the record.  (AR at 20).

work.  (AR at 20).  Given the special weight accorded treating physicians, the Court finds that the ALJ's failure to acknowledge Dr. Jackson's opinion of disability constitutes error.  Defendant argues that the ALJ properly rejected Dr. Jackson's opinion because it was brief, conclusory, and unsupported by the objective evidence.  (Joint Stipulation at 10).  But the ALJ did not articulate these reasons in his decision.  Defendant's attempt to justify the ALJ's rejection of the treating physician's opinion *post hoc* is not sufficient to cure the error.  See Vista Hill Found. v. Heckler, 767 F.2d 556, 559 (9th Cir. 1985)(a reviewing court may affirm an administrative decision only on grounds articulated by the agency); Barbato v. Commissioner of Social Sec. Admin. , 923 F. Supp. 1273, 1276 (C.D. Cal. 1996)(a court may remand if the decision of the ALJ as to claimant's entitlement to benefits on its face does not adequately explain how a conclusion was reached, even if Social Security Administration can offer proper post hoc explanations for such unexplained conclusions).

Even if the ALJ had specifically found that Dr. Jackson's opinion was not supported by objective findings, the ALJ did not attempt to re-contact the treating physician.  The Ninth Circuit permits an ALJ to rely on an absence of objective findings to reject a treating physician's opinion. Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995) (inadequate clinical findings provide specific and legitimate basis for ALJ to reject treating physician's opinion); Buckhart v. Bowen, 856 F.2d 1335, 1339 (9th Cir. 1988) (proper to disregard uncontroverted treating physician's opinion when he fails to provide objective descriptions of medical findings); cf. Embrey v. Bowen, 849 F.2d 418, 421 (9th Cir. 1988) (improper to reject treating physician's opinion where he provided at least some objective observations and

1  laboratory and x-ray testing in addition to subjective opinions).

2  Nevertheless, an ALJ may not reject a treating physician's

3  opinion for lacking supporting clinical data or explanation without

4  first re-contacting the physician to determine whether such supporting

5  clinical data exists.  In particular, 20 C.F.R. 404.1512(e)(1), in

6  pertinent part, states:

7           We will first recontact your treating physician

8           or psychologist or other medical source to

9           determine whether the additional information we

10          need is readily available.  We will seek

11          additional evidence or clarification from your

12          medical source when the report from your medical

13          source contains a conflict or ambiguity that must

14          be resolved, <u>the report does not contain all the</u>

15          <u>necessary information, or does not appear to be</u>

16          <u>based on medically acceptable clinical and</u>

17          <u>laboratory diagnostic techniques</u>.

18 20 C.F.R. 404.1512(e)(1) (emphasis added).  Thus, unless an ALJ

19 complies with his duty to re-contact the treating physician, an ALJ

20 cannot validly cite a lack of clinical data or explanation to reject

21 the treating physician's opinion.  See <u>Cleveland v. Apfel</u>, 99 F. Supp.

22 2d 374, 380 (S.D.N.Y. 2000) (remanding case to ALJ for failure to re-

23 contact treating physician before rejecting opinion and stating, "When

24 the opinion submitted by a treating physician is not adequately

25 supported by clinical findings, the ALJ must attempt, <u>sua</u> <u>sponte</u>, to

26 develop the record further by contacting the treating physician to

27 determine whether the required information is available"); <u>see</u> <u>also</u>

28 <u>Corey v. Barnhart</u>, 2002 WL 663130, at *5 (S.D. Ind. March 14, 2002)

1   ("The ALJ discredited Dr. Ciulla's opinion because of the lack of
2   objective findings, and there is no indication in the record that the
3   ALJ recontacted Dr. Ciulla to find out whether he had any findings or
4   other information to support his opinion.  The ALJ's failure to do so
5   was error.").    Thus, to the extent defendant contends that Dr.
6   Jackson's assessment was not adequately supported by objective
7   evidence, the ALJ should have recontacted Dr. Jackson to determine
8   whether he based his assessment of temporary disability on any
9   objective findings.

10  **C.    Remand Is Required to Remedy Defects in the ALJ's Decision**

11          The choice of whether to reverse and remand for further
12  administrative proceedings, or to reverse and simply award benefits,
13  is within the discretion of the Court.  McAlister v. Sullivan, 888
14  F.2d 599, 603 (9th Cir. 1989).  Remand is appropriate where additional
15  proceedings would remedy the defects in the ALJ's decision, and where
16  the record should be developed more fully.  McAlister, 888 F.2d at
17  603; Rodriquez v. Bowen, 876 F.2d 759, 763 (9th Cir. 1990).  An award
18  of benefits is appropriate where no useful purpose would be served by
19  further administrative proceedings, see Gamble v. Chater, 68 F.3d 319,
20  322-23 (9th Cir. 1995), where the record has been fully developed, see
21  Schneider v. Commissioner of the Social Security Administration, 223
22  F.3d 968, 976 (9th Cir. 2000); Ramirez v. Shalala, 8 F.3d 1449, 1455
23  (9th Cir. 1993), or where remand would unnecessarily delay the receipt
24  of benefits.  See Smolen, 80 F.3d at 1292.

25          For the foregoing reasons, the Court finds remand appropriate.
26  The ALJ's failure to address Dr. Jackson's opinion of disability
27  constitutes error.   On remand, the ALJ must provide specific and
28  legitimate reasons supported by substantial evidence in the record to

1  support his decision to reject the disability assessment of the

2  treating physician.[2]

3

4                              **ORDER**

5      The Court, therefore, VACATES the decision of the Commissioner of

6  Social Security Administration and REMANDS the case for further

7  administrative proceedings consistent with the Memorandum Opinion and

8  Order.

9

   DATED:  August 17, 2006

10                                    _____
                                              /s/
11                                    JENNIFER T. LUM
                                      UNITED STATES MAGISTRATE JUDGE

12

13

14

15

16

17

18

19

20

21

22  ────────────────

23      [2] In the Joint Stipulation, plaintiff also contends that the
    ALJ erred in failing to properly consider plaintiff's subjective
24  complaints and to properly assess his credibility and that the
    ALJ failed to pose a complete hypothetical question to the
25  vocational expert.  As explained above, however, the ALJ's errors
    in rejecting the treating physician's assessment constitute
26  sufficient reason to remand this case.  Moreover, depending on
    the outcome of the proceedings on remand, the ALJ will have an
27  opportunity to address plaintiff's other arguments again.  In any
    event, the ALJ should consider all the issues raised by plaintiff
28  in the Joint Stipulation when determining the merits of
    plaintiff's case on remand.